```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
UNITED STATES OF AMERICA,                    :
                                             :
                 Plaintiff,                  :
                                             :
        -against-                            :
                                             :    **MEMORANDUM AND ORDER**
SIMPSON BOROUGH PLACE CORP.,                 :    01-CV-693 (DLI)(VVP)
BRACH B. SIMPSON, CLUB CASINO CORP.,         :
NEW YORK CITY DEPARTMENT OF                  :
FINANCE, AND THE STATE OF NEW YORK           :
DEPARTMENT OF TAXATION AND FINANCE,          :
                                             :
                 Defendants.                 :
----------------------------------------------------------------x
```

**DORA L. IRIZARRY, U.S. District Judge:**

  Currently before the court is a motion by defendants Simpson Borough Place Corp. ("SBPC") and Branch Simpson ("Simpson")(collectively, "defendants") for an order pursuant to New York's Real Property Actions and Proceedings Law ("R.P.A.P.L") § 1355(2) to confirm the Report of Sale of Eugene J. Corcoran, United States Marshal for the Eastern District of New York, and for an order pursuant to R.P.A.P.L. §§ 1361 and 1362 to direct that surplus monies from the sale be distributed to SBPC. Also before the court is a motion by Angelo Holding Corp. ("Angelo") to reopen the foreclosure action to allow Angelo to assert a claim, or, alternatively, to allow Angelo to intervene as of right or permissively pursuant to Fed. R. Civ. P. 24(a) and 24(b). For the reasons set forth below, Angelo's motion is denied and that of defendants SBPC and Simpson is granted.

**Statement of Facts**

  In 1985, P&F Associates ("P&F"), a company in which Simpson was a general partner, took

1

out a $635,000 note from Citibank, N.A. *See* Affidavit of Branch Simpson in Support of Defendant's Motion ("Branch Affidavit") ¶2. The note was secured by a mortgage on property located at 26-44 Borough Place in Queens, New York ("the Property"). The $635,000 note, owed to Citibank is the "First Mortgage" on the Property. *Id.* In 1988, Simpson sold his interest in P&F to the other partners for a $570,000 note, also secured by a mortgage on the Property. Simpson's $570,000 note is the "Second Mortgage" on the Property. *Id.* at ¶3. The First Mortgage was assigned to the Small Business Administration ("SBA") in 1991. *Id.* at ¶6. Eventually, the property was deeded to SBPC, still subject to the First and Second Mortgages.[1] *Id.* at ¶7. P&F defaulted on both the First Mortgage and the Second Mortgage. *Id.* at ¶4-5.

In 2001, the plaintiff, on behalf of the SBA, brought an action seeking foreclosure of the Property because P&F had defaulted on the First Mortgage. On June 27, 2002, the Honorable Reena Raggi, then U.S. District Judge for the Eastern District of New York, issued a Judgment of Foreclosure and Sale of the Property. Simpson Aff. Exhibit A. Pursuant to the Judgment, on April 11, 2003, an auction was held. Affidavit of Stephen D. Hans in support of Angelo's Motion to Intervene ("Hans Aff.") ¶ 3; Declaration of Branch Simpson in Opposition to Angelo's Motion to

---

[1] Angelo alleges that, under the merger doctrine, Simpson's Second Mortgage on the Property was extinguished when SBPC became the owner. *See Cambridge Factors, Inc. v. Thompson,* 215 A.D.2d 427, 626 N.Y.S.2d 259 (2nd Dep't 1999). The court need not address this argument because, aside from Anglo's conculsory allgeations, there is no evidence regarding the relationship between SBPC and Simpson. Moreover, Simpson's entitlement to the surplus funds, as a mortgagee, is an issue for the court to decide pursuant to R.P.A.P.L. § 1361(2). *See Citibank, N.A. v. Schroeder,* 266 A.D.2d 332, 698 N.Y.S.2d 304 (2nd Dep't 1999). The court, however, does not need to make this determination because Simpson has waived payment of the Second Mortgage and has consented to the extinguishment of the lien. Branch Aff. ¶ 14; *see also Chase Manhattan Mortg. Corp. v. Hall,* 18 A.D.3d 413, 795 N.Y.S.2d 67 (2nd Dep't 2005) ("a person with a vested interest or lien upon the land may assign or convey that interest, and that such an assignment or conveyance will be recognized in a surplus money proceeding").

Intervene ("Simpson Decl.") ¶ 3. The successful bidder at the auction was 27-16 41st Ave., LLC ("27-16"), a company headed by Angelo Gerasimou.[2] *Id.* On April 11, 2003, Gerasimou, on behalf of 27-16, signed a "Memorandum of Sale" in which 27-16 agreed to pay $1,100,000 for the Property and agreed to comply with the "Terms of Sale." The Terms of Sale are annexed to the Hans Aff. as Exhibit B and the Simpson Decl. as Exhibit B.

Pursuant to the Terms of Sale, 27-16 put down a $110,000 deposit on the Property. *See* Hans Aff. Exhibit F; Simpson Decl. Exhibit B. The Terms of Sale required 27-16 to close and pay the balance of the sale price on May 15, 2003. *Id.* In the event that 27-16 failed to close on May 15, 2003, and no extension was given, the Terms of Sale allowed the seller (the government) to hold 27-16 liable for "the whole amount" of the purchase with interest. *Id.* Moreover, in the event that 27-16 failed to close, the Terms of Sale allowed the seller to reauction the property. *Id.* If, at a reauction, the Property sold for a lesser amount than 27-16 agreed to pay, the Terms of Sale allowed the seller to collect the deficiency from 27-16. *Id.*

27-16 did not close on May 15, 2003, but obtained extensions of the closing date. On March 30, 2005, 27-16 assigned its right to purchase the property to Universal Property Management Corp. ("Universal"). *See* Simpson Decl. Exhibit D, Hans Aff. Exhibit C. Gerasimou is also the principal and an officer of Universal. Affidavit of Gerasimou in Support of Angelo's Motion to Intervene ("Gerasomou Aff.") ¶ 4. On April 12, 2005, Universal told plaintiff that it would not close on the property.[3] *See* Simpson Decl. Exhibit C; Hans Aff. Exhibit E. Pursuant to the Terms of Sale, a

---

[2] Gerasimou is the principal of both 27-16 and of Angelo. Hans Aff. ¶ 1.

[3] Gerasimou claims that, "upon information and belief," Simpson's actions prevented 27-16 from closing on the Property before the assignment to Universal. Gerasimou

3

reauction was held on October 21, 2005.[4]  *See* Simpson Decl. Exhibit C, Hans Aff. Exhibit E.  At reauction, the Property was purchased for $1,700,000.  *Id.*  The closing occurred on February 6, 2006.  *Id.*

Pursuant to R.P.A.P.L. § 1355(1), on September 7, 2006, the United States Marshal for the Eastern District of New York, as the officer making the sale, issued a "Report of Sale."[5]  According to the Report of Sale, the buyer paid $1,700,000.  *Id.*  The government credited 27-16's $110,000 deposit from the April 2003 auction toward the sale price.  *Id.*  The government then deducted from the gross amount of $1,810,00 its $984,622.23 judgment against SBPC, plus interest from the date of the judgment (June 6, 2002) in the amount of $84,843.66 and fees for advertising the sale.  After all the deductions, the sale generated a surplus of $561,285.02.  *Id.*

R.P.A.P.L. § 1355(2) requires that a motion to confirm the Report of Sale be made between three and four months after the Report of Sale is issued.  Accordingly, on December 11, 2006, SBPC

---

Aff. ¶ 3.  As noted below, this assertion has no bearing on Angelo's motion to intervene. Moreover, Gerasimou states that the assignment to Universal was made because Universal, unlike 27-16, had "available capital required to close." *Id.* at ¶ 4.  Thus, the evidence indicates that 27-16 was unable to close because it did not have the capital to do so, not because Simpson prevented the closing.

[4] Although not relevant for the purposes of this motion, the plaintiff apparently discovered that Club Casino Corp. had a leasehold interest in the Property and therefore should have been a party to the foreclosure action.  Thus, in November 2005 the plaintiff served an amended complaint naming Club Casino Corp as a defendant in this action.  (ECF Docket No. 40).  Club Casino Corp. defaulted, and the court entered a default judgment in strict foreclosure against Club Casino Corp. on April 27, 2006.

[5] R.P.A.P.L. § 1355(1) requires that the officer making the sale file the Report of Sale withing 30 days of the sale, unless the court extends that time within the 30 days.  Because the Report of Sale was not filed 30 days after February 6, 2006 (i.e. March 4, 2006) SBPC and Simpson moved to compel the filing of the Report of Sale.  The motion became moot when the Report of Sale was filed in August of 2006. (ECF Docket Nos. 61 and 62).

and Simpson made a motion to confirm the Report of Sale and for distribution of the surplus monies. These motions are currently before the court. In the meantime, Universal assigned any right it had to 27-16's deposit to Angelo. *See* Hans Aff. Exhibit G. Angelo now makes this motion to intervene so that it may make a claim to the $110,000 deposit.

## Discussion

*Angelo's Motion to Intervene as of Right*

Fed. R. Civ. P. 24 permits a party to intervene as of right upon a showing that (1) the motion is timely, (2) the party has an interest in the action, (3) the interest may be impaired by the disposition of the action, and (4) the interest is not protected adequately by the parties to the action. *See Brennan v. N.Y.C. Bd. of Educ.,* 260 F.3d 123, 130 (2d Cir. 2001).

Courts evaluate the following factors to determine whether a motion to intervene is timely: (1) the length of time the applicant knew or should have known of his interest before making the motion; (2) prejudice to existing parties resulting from the applicant's delay; (3) prejudice to the applicant if the motion is denied; and (4) the presence of unusual circumstances mitigating for or against a finding of timeliness. *Farmland Dairies v. Comm'r of N.Y. State Dep't of Agric. & Mkts.*, 847 F.2d 1038, 1044 (2d Cir. 1988). Of all the factors, the first factor – the length of time that Angelo knew or should have known of his interest – is the most important and the most damaging to Angelo. *See Catanzano v. Wing,* 103 F.3d 223, 232 (2d Cir. 1996) ("[a]mong the most important factors in a timeliness decision is the length of time the applicant knew or should have known of his interest before making the motion."). The court denies Angelo's motion to intervene as of right for the following reasons.

First, Angelo waited too long to make the motion. In October 2005, the Property was reauctioned for an amount greater than 27-16 agreed to pay. The government, however, did not return the deposit. Thus, since at least October 2005, 27-16's successor corporation, Angelo, knew that the government was not returning 27-16's deposit. The court finds that Angelo knew or should have known of its interest in the action in October 2005, more than fifteen months prior to the date in which Angelo filed its motion to intervene. A delay of fifteen months is untimely. *See Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171, 182 (2d Cir. 2001) (twelve-month delay was untimely); *In re Holocaust Victim Assets Litigation,* 225 F.3d 191. 198-199 (2d Cir. 2000) (eight-month delay before motion to intervene was untimely); *Catanzano,* 103 F.3d at 232-33 (denying intervention after motion was filed eighteen months after applicant knew of interest in litigation)*; United States v. New York,* 820 F.2d 554, 557 (2d Cir. 1987) (motion to intervene denied where there was a fifteen-month delay after applicant knew or should have known of interest).

Angelo argues that under the R.P.A.P.L. it was unable to intervene in the motion until after the Report of Sale was confirmed, something that could only happen between three and four months after the Report of Sale was filed by the U.S. Marshal. *See* Gerasimou Aff. ¶ 6. Angelo has misread the R.P.A.P.L. The Report of Sale was filed in September 2006. Pursuant to R.P.A.P.L. § 1361, Angelo could have filed a notice of claim with the clerk of the court "anytime before the confirmation of the report of sale." A person or entity does not have to be a party to the action to file a notice of claim. In fact, parties to the foreclosure action are not required to file a notice of claim; only non-parties are. *See Franklin Credit Management Corp. v. Pearlman,* 16 A.D.3d 617, 792 N.Y.S.2d 525 (2nd Dep't 2005) (party to a foreclosure action not required to file a notice of claim

to have the court determine the surplus; non-party is). In other words, anytime after September 2006 but before the court confirmed the Report of Sale, Angelo could have filed a notice of claim without intervening in the action.[6] Angelo, however, never filed the notice of claim.

Second, Angelo could have made a claim to the surplus without intervening in the action. The very language of R.P.A.P.L. § 1361(2) allows the court to allocate the surplus "on motion of any party to the action, or any person who has filed a notice of claim." Thus, had Angelo filed a notice of claim before the Report of Sale was confirmed, it would have been able to make a motion pursuant to R.P.A.P.L. § 1361(2) *even if it was not a party to the action.* The Report of Sale was filed eleven months after Angelo's alleged entitlement to a portion of the surplus became apparent. Angelo, however, waited until *after* SBPC and Simpson made a motion to confirm the Report of Sale, some four months after the Report of Sale was filed. Clearly, there were numerous mechanisms for Angelo to assert its rights prior to making a motion to intervene in the action, none of which Angelo availed itself of. The court, therefore, finds that Angelo's motion is untimely.

Third, the court finds that Angelo will not suffer prejudice from the denial of the motion to intervene. If Angelo believes that, pursuant to the Terms of Sale, the government was required to return the deposit when the Property was sold at a higher value, it may be able file suit against the government for breach of contract. *See* 28 U.S.C. § 1491(a)(1) (2000) ("The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United

---

[6] The Report of Sale was required to be filed in March of 2006. Angelo could have made a motion to intervene at that time to compel the U.S. Marshal to file the Report of Sale so that Angelo could pursue its right to the deposit. Notably, SBPC and Simpson filed a motion to compel in August of 2006. *See* ECF Docket No. 59. If anything, the delay in the filing of the Report of Sale gave Angelo more time to contemplate and prepare the notice of claim.

States founded … upon any express or implied contract with the United States . . . ."); *In re Holocaust Victim Assets Litigation*, 225 F.3d 191(2d Cir. 2000) ("[because appellants remain free to file a separate action, they have not established that they will be prejudiced if their motion to intervene is denied.").

Fourth, the court also finds that it is far from clear that Angelo has a cognizable interest in the action. In order for an interest to be cognizable under Rule 24, it must be "direct, substantial, and legally protectable." *Washington Elec. Coop., Inc. v. Massachusetts Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir.1990). Anglo's interest is not legally protectable because under New York law, "surplus money realized upon a foreclosure sale . . stands in the place of the land for all purposes of distribution among persons having vested interests or liens upon the land . . . only one who had a vested estate or interest in the land sold under foreclosure which was cut off by the foreclosure sale, is entitled to share in the surplus money." *Roosevelt Sav. Bank v. Goldberg*, 118 Misc.2d 220, 459 N.Y.S.2d 988 (2d Dep't 1983). Angelo's alleged right to the deposit is not a vested interest in the land and the deposit is not a lien against the property. If at all, as noted above, Angelo has the right to sue the government for breach of contract. However, that does not permit it to have 27-16's deposit refunded from the surplus of the foreclosure sale and does not allow Angelo to permissively intervene in the action.

Fifth, Angelo forfeited its right to the deposit by not closing as required by the Terms of Sale. *See Johnson v. Werner,* 63 A.D.2d 422, 407 N.Y.S.2d 28 (2d Dep't 1978) ("[i]n the event of a default by the purchaser or a repudiation of the contract of purchase, upon which a down-payment has been made, the law is clear that the purchaser may not recover his down-payment. This is the rule

even in instances where the premises are sold for a sum equal to or greater than the contract price."). Angelo correctly points out that, under some circumstances, a defaulted purchaser in a foreclosure sale is entitled to the return of the deposit.[7] *See, e.g. Federal Nat. Mortg. Ass'n v. Walsh,* 259 A.D.2d 660, 686 N.Y.S.2d 811 (2nd Dep't 1999). However, in order to demonstrate an entitlement to the return of the deposit, Angelo would need to show that it did not wrongfully refuse to close. *Id.* Moreover, where the Terms of Sale for a foreclosure sale are silent on the fate of the deposit in the event of breach, courts in New York have the discretion to limit damages by, for example, requiring the seller to return the deposit. However, "there is no principle of New York state law that requires a court to limit a defaulting purchaser's liability in this manner." *In re Target Two Associates, L.P.*, 04 CV. 8657, 2005 WL 1140538 *3 (S.D.N.Y. May 16, 2005). Because Angelo's interest in the action is dependent upon the court finding that it is entitled to the return of the deposit despite the breach, Angelo has not established that it has an interest which warrants intervention in the action. *See Washington Elec. Coop., Inc.*, 922 F.2d at 97 ("an interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy [Rule 24].").

*Angelo's Motion for permissive intervention*

In addition to requesting to intervene as of right, Angelo also seeks permission of the court to intervene pursuant to Fed. R. Civ. P. 24(b). The most important consideration governing Rule 24(b) is "whether the intervention will unduly delay or prejudice the adjudication of the rights of the

---

[7] Angelo's entitlement to the deposit are even more suspect because, under the Terms of Sale, in the event that 27-16 failed to close, and no extension was given, 27-16 would be liable for "the whole amount" of his purchase, with interest. *See* Hans Aff. Exhibit F; Simpson Decl. Exhibit B. The government chose not to hold 27-16 to the Terms of Sale.

9

original parties." *U.S. v. City of New York*, 179 F.R.D. 373, 381 (E.D.N.Y. 1998) (*quoting Sackman v. Liggett Grp., Inc.*, 167 F.R.D. 6 (E.D.N.Y. 1996)). Permissive intervention is denied because SBPC and Simpson would be prejudiced if they were required to wait for the allocation of the surplus while the court determined whether 27-16's deposit became a vested right in the land and whether 27-16 forfeited its right to the deposit by breaching the Terms of Sale. The court also finds that there is no commonality of law and fact between Angelo's right to recover 27-16's deposit and SBPC's entitlement to the surplus since Angelo's right to recover 27-16's deposit turns on distinct legal issues concerning rights vested in the land and the contractual rights of purchasers at foreclosure sales.

> *Confirmation of the Report of Sale Pursuant to R.P.A.P.L. §1355*
> *and Disbursement of the Surplus Pursuant to R.P.A.P.L. §1361*

Turning to defendants' motion pursuant to R.P.A.P.L. §1355. This section requires that a party moving to confirm a Report of Sale present with the motion papers: (1) a proper voucher for the surplus monies showing that they have been paid into Court; (2) a Certificate of the Clerk specifying the Notices of Claim to the surplus monies, if any; and (3) an affidavit showing any other unsatisfied lien on the property. *See U.S. v. Moore,* 05 CV 6128, 2006 WL 1144538, (W.D.N.Y. May 1, 2006). Defendants' motion contains all the required materials: the affidavit submitted by Simpson indicates (1) that the money has been deposited into the court (Exhibit C), (2) that there are no other claims to the surplus money (Exhibit D) and, (3) that there are no unsatisfied liens on the property. Simpson Decl. ¶ 15. The Report of Sale is, therefore, confirmed.

## Conclusion

Angelo's motion to intervene is denied. Simpson, to the extent he may have held a second

mortgage on the property, waives his right to the surplus. Accordingly, the court finds that SBPC, as a party to the foreclosure action, is the only party entitled to a distribution from the surplus. Pursuant to R.P.A.P.L. §1361, the court finds that SBPC is entitled to the surplus in the amount of $561,285.02. SBPC is ordered to submit an order in conformity with this Memorandum and Order, electronically, on or before September 28, 2007.[8]

DATED:   Brooklyn, New York
         September 5, 2007

                                                    /s/
                                              DORA L. IRIZARRY
                                              United States District Judge

---

[8]    A sample of the appropriate order can be found at 12B West's McKinney's Forms Real Property Practice § 17:206.